**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      Case No. 22-cr-20315

JAMES TAYLOR,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE (ECF Nos. 21, 32) AND GRANTING THE GOVERNMENT'S MOTION TO VOLUNTARILY DISMISS WITHOUT PREJUDICE COUNT I (ECF No. 44)**

Defendant James Taylor filed two motions to suppress evidence. (ECF Nos. 21, 32.) The first asks the court to find Defendant's April 27, 2022 arrest unlawful and to suppress all evidence seized and statements obtained as fruit of that unlawful arrest. (ECF No. 21.) Alternatively, it asks the court to find the inventory search conducted as part of his April 27th arrest unlawful and to suppress all evidence related to it. (Id.) The second motion seeks suppression of all evidence seized during the execution of a search warrant on the target vehicle in this case as well as all other fruits obtained as a result. (ECF No. 32.) The Government filed responses to both motions. (ECF Nos. 28, 34.) Over the course of two days, on May 2, 2023 and May 18, 2023 respectively, the court held a hearing.

After the first day of the hearing, Defendant was permitted to supplement his second motion to suppress with information challenging the impoundment and tow procedures used with respect to the target vehicle. (ECF No. 38.) He did so on May 12, 2023. (ECF No. 41.) The Government was further permitted to file a response and did

so on May 16, 2023. (ECF No. 43.) Just before the second day of the hearing, on May 17, 2023, the Government filed an unopposed Motion to Voluntarily Dismiss Without Prejudice Count I of the Indictment. (ECF No. 44.)

For reasons as stated on the record, the court granted the Government's motion after confirming that Defendant did not challenge any aspect of the dismissal (ECF No. 44) and further denied Defendant's first suppression motion (ECF No. 21). As to Defendant's second motion to suppress, the court found that, due to Defendant's abandonment of the target vehicle, he possessed no Fourth Amendment "standing" to challenge the propriety of the search and seizure of the target vehicle. Nonetheless, Defendant sought for the court to address his request for a *Franks* hearing. The court indicated it would issue a supplemental opinion.

"A defendant charged with a crime of possession may claim the benefits of the exclusionary rule only if his Fourth Amendment rights have in fact been violated, *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and search and seizure of abandoned property does not violate the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960)." *United States v. Dillard*, 78 Fed. App'x 505, 509 (6th Cir. 2003). Thus, Defendant's suppression motion as it relates to the impoundment and search of the target vehicle, a gold Chevy Malibu, turns on whether or not Defendant abandoned the vehicle. The question of abandonment is a mixed one of law and fact, and the district court's resolution of any factual issue is entitled to great deference. *United States v. Oswald*, 783 F.2d 663, 665–66 (6th Cir. 1986). The term "abandonment," in this context, does not refer to traditional concepts of property law. *United States v. Tolbert*, 692 F.2d 1041, 1044 (6th Cir.

2

1982). Rather, the capacity to claim the protection of the Fourth Amendment depends "upon whether the person who claims the Amendment has a legitimate expectation of privacy in the invaded place." *Tolbert*, 692 F.2d at 1044 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). The Supreme Court has noted that the concept of a "legitimate expectation of privacy" incorporates two elements: (1) whether an individual's conduct has exhibited such an expectation, and (2) whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable under the circumstances. *Id.* Abandonment is primarily a question of intent, and intent my be inferred from words, acts, and other objective facts. *Dillard*, 78 Fed. App'x at 509–11. Privacy expectations will vary with the type of property involved and its location. *Oswald*, 783 F.2d at 666–67; *United States v. Metzger*, 778 F.2d 1195, 1200 (6th Cir. 1985). The defendant bears the burden of demonstrating standing by showing that he had a legitimate expectation of privacy in the searched item. *Id.*

With these guiding principles in mind, the court found that Defendant abandoned the gold Chevy Malibu. Particularly instructive to the court were *United States v. Oswald*, 783 F.2d 666–67, and *United States v. Williams*, 569 F.2d 823 (5th Cir. 1978), both of which emphasized that abandonment is not negated by a feeble hope of re-acquisition. While acknowledging that Defendant left certain items in the gold Chevy Malibu that he may have wanted to retain, of greater interest to the court was the fact that the vehicle was used minutes before to carry out a felonious assault in broad daylight, events which were further captured by conspicious surveillance cameras and observed by several onlookers. When law enforcement found the Malibu in a grocery store parking lot across the street from the Sunoco gas station, all four windows were

3

rolled down and shell casings were visible on the floor in plain sight. Perhaps most importantly, Defendant *fled in another vehicle*. It is reasonable to conclude Defendant knew his Malibu would quickly become the target of police investigation and therefore thought to distance himself from it. That is, as the court phrased it during the hearing, he was driving a hot car and he decided to ditch it—i.e., to *abandon* it. As such, and for reasons set forth on the record, Defendant can claim no Fourth Amendment violations.

Despite this finding, at the conclusion of the hearing, Defendant asked the court to address his request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and his argument that the search warrant for the gold Chevy Malibu did not establish a sufficient nexus. (*See* ECF No. 32, PageID.283–85, 288–93.) However, for a defendant to argue successfully that evidence should be suppressed, he must show, as an element of his claim, that the Government infringed upon his Fourth Amendment rights. *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014). In other words, "standing is 'an element' of a Fourth Amendment suppression claim," and proving standing is a burden which Defendant bears. *United States v. Russell*, 26 F.4th 371 (6th Cir. 2022). Therefore again, because search and seizure of abandoned property does not violate the Fourth Amendment, *Abel v. United States*, 362 U.S. at 241, Defendant's abandonment of the gold Chevy Malibu prevents him from now attacking any search of the vehicle.

Even without this Fourth Amendment standing impediment, Defendant would still not be entitled to a *Franks* hearing. Under *Franks*, the Fourth Amendment requires a hearing where a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth,

4

was included by the affiant in the warrant affidavit" and the "allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155–56. Here, Defendant claims that a *Franks* hearing is required because the affidavit submitted in support of the search warrant for Defendant's gold Chevy Malibu included the following recklessly false statements: (1) the store clerk identified the suspect in the video as James Taylor; (2) the victim provided a statement at the police station wherein the victim admitted to knowing the offender James Taylor as the person shooting at him; (3) the suspect fled in the gold Malibu after the shooting; and (4) the defendant has access to the Malibu. (ECF No. 32, PageID.290–91.) Having thoroughly reviewed the affidavit signed and submitted on April 27, 2022, and for reasons outlined below, the court finds that no recklessly false statements were used necessary to the finding of probable cause.

As to Defendant's first argument, that the affidavit falsely implies that the gas station clerk knew the shooting suspect to be James Taylor when the clerk actually indicated a "J.T." frequents the location, the court does not agree with Defendant's characterization of the affidavit. (ECF No. 32, PageID.290–91.) Rather, given what law enforcement knew collectively about Defendant by the time the affidavit was compiled, use of Defendant's full name was not recklessly false. Moreover, the key information ascribed to the clerk was that the suspected offender was "a regular customer." (ECF No. 32-2, PageID.299.) Therefore, Defendant's first argument has no merit.

Moving to Defendant's second argument, that the affidavit falsely indicates that the victim knew James Taylor to be the shooter when the victim's statement indicates otherwise, the court again finds no issue. (ECF No. 32, PageID.291.) While Defendant is correct that the victim's statement reflects that he did not know the identity of the

5

shooter, the victim did admit to knowing Defendant and identified him as the shooter in a later interview with law enforcement. (ECF No. 34-3, PageID.333.) Thus, though the affidavit suggests that the victim identified Defendant as the shooter in his initial interview with police, the substance of the affidavit is correct in this regard. Therefore, Defendant's second argument has no merit.

Finally, Defendant's third and fourth arguments border on frivolity. In asserting "the affidavit also falsely claims that the suspect fled in the gold Malibu after the shooting," Defendant blatantly misrepresents the plain language of the affidavit. (ECF No. 32, PageID.291.) The affidavit indicates: "The video further showed the offender James Taylor returned, parking his gold Malibu across from Waverly in the Alley[1], walked up [to] the victim's red Chrysler 300…and drove off." (ECF No. 32-2, PageID.299.) In no way can that language be construed as suggesting the suspect fled in the gold Malibu. As for Defendant's remaining argument that, contrary to what the affidavit suggests, Defendant did not have access to the Malibu because it was in a police impound facility when the affidavit was authored, the court finds Defendant's characterization strained at best. Given that the search warrant itself indicates that the Malibu's current location was at the Detroit Police Evidence Tow Lot, the court is hard-pressed to adopt Defendant's reading of the affidavit. (ECF No. 32-2, PageID.298.) Thus, in summary, Defendant has no basis to request a *Franks* hearing.

---

[1] Though he did not make the argument in his motion, Defendant suggested at the motion hearing that additional support for a *Franks* hearing comes from the affidavit's false characterization of where the gold Malibu was found. The affidavit does err in stating that the vehicle was found in the "Alley," as it was unquestionably found in a grocery store parking lot. However, the court finds that the vehicle's location was not necessary for a probable cause determination, especially in light of the affidavit's otherwise accurate recounting of the surveillance footage.

Additionally, any challenge to whether or not the affidavit established a sufficient nexus between criminal activity and the gold Chevy Malibu is groundless. The affidavit confirms that, based on a license plate comparison, police located the gold Chevy Malibu seen in surveillance footage of the shooting and impounded it. The affidavit further indicates that suspect parked the gold Chevy Malibu across the street before driving off in the victim's vehicle. While no indication is given regarding the timing of when the shooting occurred in relation to the officers' recovery of the vehicle, there was probable cause to find that the gold Chevy Malibu may contain evidence of the non-fatal shooting or provide identifying information as to the vehicle's owner.

Accordingly, for the reasons stated above, and further elaborated on the record during the motion hearing,

IT IS ORDERED that the Government's "Motion to Voluntarily Dismiss Without Prejudice Count 1 of the Indictment" (ECF No. 44) is GRANTED.

IT IS FURTHER ORDERED that Defendant's "Motion to Suppress Evidence" (ECF No. 21) is DENIED.

IT IS FURTHER ORDERED that Defendant's "Motion to Suppress" (ECF No. 32) is DENIED.

              s/Robert H. Cleland     /
              ROBERT H. CLELAND
              UNITED STATES DISTRICT JUDGE

Dated: May 24, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 24, 2023, by electronic and/or ordinary mail.

              s/Lisa Wagner      /
              Case Manager and Deputy Clerk
              (810) 292-6522